[Cite as *State v. Nurse*, 2013-Ohio-785.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 26363 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| TERRELL DOENTEZ NURSE | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 11 10 2817 (B) |

DECISION AND JOURNAL ENTRY

Dated: March 6, 2013

BELFANCE, Presiding Judge.

{¶1} Terrell Nurse appeals his convictions for aggravated robbery and aggravated burglary. For the reasons set forth below, we affirm.

I.

{¶2} On September 26, 2011, four men entered the home of Reba Alexander and Jaunte Smith. The four were alleged to have been Mr. Nurse, "Bernard,"[1] Raeshawn Fain, and Anthony Shellman. The men proceeded to rob Mr. Smith and Ms. Alexander at gun point, stealing Ms. Alexander's purse, which contained $200 and important documents, and her son's lunchbox. Following a bench trial, Mr. Nurse was convicted of aggravated burglary and two counts of aggravated robbery, along with an underlying firearm specification for each count. The trial court sentenced him to an aggregate term of seven years in prison. Mr. Nurse has appealed, raising five assignments of error for our review.

---

[1] Bernard's last name was never established.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT OVERRULED MR. NURSE'S CRIM.[R]. 29(A) MOTION FOR JUDGMENT OF ACQUITTAL BECAUSE THE EVIDENCE WAS INSUFFICIENT TO SUPPORT A CONVICTION FOR AGGRAVATED ROB[B]ERY AND AGGRA[VA]TED BURG[LA]RY

{¶3} In Mr. Nurse's first assignment of error, he argues that the trial court erred in denying his Crim.R. 29 motion because the State failed to produce sufficient evidence that he had committed aggravated robbery and aggravated burglary. We disagree.

{¶4} "We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence." *State v. Slevin*, 9th Dist. No. 25956, 2012–Ohio–2043, ¶ 15. "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 9th Dist. No. 24731, 2009–Ohio–6955, ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶5} Mr. Nurse was convicted of two counts of aggravated robbery pursuant to R.C. 2911.01(A)(1), which provides

> No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]

Mr. Nurse was also convicted of violating R.C. 2911.11(A)(1) by committing aggravated burglary. R.C. 2911.11(A)(1) provides,

> No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if * * * [t]he offender inflicts, or attempts or threatens to inflict physical harm on another[.]

Each of Mr. Nurse's convictions also had an underlying firearm specification pursuant to R.C. 2941.145.

{¶6} Mr. Shellman testified that he was riding in a car with Mr. Fain and Mark Crews when Mr. Crews received a phone call from Bernard, and the three men went to meet with Bernard and Mr. Nurse. According to Mr. Shellman, Bernard and Mr. Nurse explained that Ms. Alexander and Mr. Smith had money and drugs in their home, including nearly $10,000 in financial aid for Ms. Alexander's schooling. The men proceeded to plan to rob Ms. Alexander and Mr. Smith.

{¶7} The men drove over to the house, and someone called the house to tell the occupants that they wanted to buy marijuana. Mr. Crews waited in the car while Mr. Smith let Mr. Nurse, Mr. Fain, Mr. Shellman and Bernard into the house. Once inside, Mr. Fain drew a gun on Mr. Smith, but Mr. Shellman, who knew Mr. Smith from childhood, took the gun from Mr. Fain. Meanwhile, Mr. Nurse had begun "tearing up the house * * * looking for the $10,000 that was in there." According to Mr. Shellman, when the men left, Mr. Nurse was carrying Ms. Alexander's purse.

{¶8} Detective Pierre Irvine testified that his investigation of the robbery led him to believe Mr. Nurse had participated in it, and a warrant was issued for Mr. Nurse's arrest. Detective Darrell Parnell testified that, while working as a security officer at a grocery store, he

observed Mr. Nurse in the store. He approached Mr. Nurse and attempted to place him under arrest, telling Mr. Nurse that a warrant had been issued for him. Upon hearing that a warrant was out for his arrest, Mr. Nurse ran from Detective Parnell; however, two police cruisers stopped him a couple of blocks from the store, and he was taken into custody.

{¶9} Following Mr. Nurse's arrest, Detective Irvine spoke with him, and he admitted to being present at the home of Ms. Alexander and Mr. Smith but denied having participated in the robbery. Mr. Nurse told Detective Irvine that he had actually just gone to the house to smoke marijuana and that he was surprised when Mr. Fain had pulled a gun on Mr. Smith and demanded money. Nevertheless, Mr. Nurse admitted to Detective Irvine that he had left with Mr. Fain and Mr. Spellman.

{¶10} When viewed in the light most favorable to the State, the evidence presented would allow a reasonable juror to find that Mr. Nurse had helped plan to rob Ms. Alexander and Mr. Smith. A reasonable juror could also find that Mr. Nurse and the other men entered Ms. Alexander's and Mr. Smith's house under pretense of purchasing drugs with the intent to steal from them and, furthermore, that Mr. Nurse helped search the house for valuables and took Ms. Alexander's purse. There was also evidence that a gun had been used in committing the offense. Thus, there was sufficient evidence that would allow a reasonable jury to determine that Mr. Nurse had violated or was complicit in violating R.C. 2911.11(A)(1) by entering the house under pretense with the intent to commit a crime and that he had violated or was complicit in violating R.C. 2911.01(A)(1) because a firearm was brandished during the commission of a theft offense. *See* R.C. 2923.03(A)(2) ("No person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense[.]").

{¶11} Accordingly, Mr. Nurse's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

MR. NURSE'S CONVICTION FOR AGGRAVATED ROBBERY AND AGGRA[VA]TED BURG[LARY] IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶12}  In Mr. Nurse's second assignment of error, he argues that his convictions are against the manifest weight of the evidence because the only evidence that he knowingly participated in the robbery came from Mr. Shellman's testimony.  Thus, according to Mr. Nurse, his conviction should be overturned because Mr. Spellman's testimony was devoid of credibility.

{¶13}  In reviewing a challenge to the weight of the evidence, the appellate court

[m]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶14}  Mr. Nurse's primary argument is that Mr. Shellman's testimony is highly suspect. The trial court also agreed, stating,

The testimony of [Mr.] Shellman * * * must be viewed with grave suspicion because he is a person who was a codefendant in the commission of the very same crimes and a co-complicitor. * * * And, indeed, the Shellman testimony was such that he did not acknowledge conduct that the victim [Ms.] Alexander attributed to him, and he ascribed conduct to [Mr.] Nurse that no one else did.  So the Court found the testimony of witness Shellman to be not very credible.

While the trial court clearly did not give much weight to Mr. Shellman's testimony, especially the portions specifically contradicted by Ms. Alexander, the trial court could have found other portions of Mr. Shellman's testimony credible.  For example, given Mr. Nurse's admissions to Detective Irvine that he came and left with the other men, the trial court may have found credible Mr. Shellman's testimony that the men had planned to rob Ms. Alexander and Mr. Smith before arriving at the house.  Detective Irvine testified that Mr. Nurse had admitted to him that he had

been at the house during the robbery and that he had arrived and left with Mr. Shellman, Mr. Fain, and Bernard. He also told Detective Irvine that Mr. Fain had produced a firearm and had threatened to shoot Mr. Smith if Mr. Smith did not hand over the money. In other words, Detective Irvine's testimony was that Mr. Nurse had admitted to arriving with and leaving with the men who robbed Ms. Alexander and Mr. Smith. Mr. Nurse has not suggested that the trial court should have disbelieved Detective Irvine's testimony. In fact, he urges that Detective Irvine's statement that Mr. Nurse had claimed to have merely gone to the house to smoke marijuana and not to rob the occupants indicates that he was not involved in the robbery. However, a trier of fact is allowed to believe all, part, or none of a witness's testimony, and the trial court was free to weigh all of the evidence in deciding whether it found Mr. Nurse's claim of innocence to be credible.

{¶15} There is no dispute that Ms. Alexander and Mr. Smith were robbed and that Mr. Nurse was there during the robbery. Nor is there any dispute that he arrived and left with the other co-defendants after the robbery was completed. The only question is whether he was a participant in it. However, after a thorough review of the record, we cannot say that the trier of fact lost its way and committed a manifest miscarriage of justice when it found that Mr. Nurse had participated in the robbery. Accordingly, we cannot conclude that his convictions for aggravated robbery and aggravated burglary are against the manifest weight of the evidence.

{¶16} His second assignment of error is overruled.

ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR IN ALLOWING IN HEARSAY EVIDENCE UNDER THE HEARSAY E[X]CEPTION 803(2)[.]

**{¶17}** Mr. Nurse, in his third assignment of error, argues that the trial court erred when it allowed Ms. Alexander to testify that Mr. Smith had told her that "[h]e knew a couple of them from the west side. Some of them played basketball with him." According to Mr. Nurse, Mr. Smith's statement to Ms. Alexander was inadmissible hearsay because it did not qualify as an excited utterance under Evid.R. 803(2).

**{¶18}** However, assuming without deciding that the trial court should have excluded Ms. Alexander's statement that Mr. Smith claimed to have recognized some of the robbers, Mr. Nurse fails to explain how the admission of the statement affected his substantial rights. *See* Crim.R. 52(A) ("Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."). Mr. Smith's statement to Ms. Alexander did not identify Mr. Nurse as one of the men at his house, nor did Mr. Smith's statement attribute any behavior on the part of Mr. Nurse. In fact, Ms. Alexander never identified Mr. Nurse as one of the men who robbed her, identifying only Mr. Shellman and Mr. Fain, and, furthermore, even if Ms. Alexander's statement about what Mr. Smith had told her had identified Mr. Nurse in some way, Mr. Nurse admitted to Detective Irvine that he was at the house. Accordingly, if any error occurred, we must conclude that it was harmless. *See* Crim.R. 52(A).

**{¶19}** Mr. Nurse's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR BY SENTENCING MR. NURSE WITHOUT COMPLYING WITH R.C. 2929.19(B)(2)(G).

**{¶20}** In Mr. Nurse's fourth assignment of error, he argues that the trial court failed to comply with former R.C. 2929.19(B)(2)(g) and, therefore, his conviction must be reversed. We disagree.

{¶21}  At the time Mr. Nurse was sentenced, former R.C. 2929.19(B)(2)(g) provided:

> Subject to division (B)(3) of this section, if the sentencing court determines at the sentencing hearing that a prison term is necessary or required, the court shall * * * [i]nclude in the offender's sentence a statement notifying the offender of the information described in division (F)(3) of section 2929.14 of the Revised Code regarding earned credits under section 2967.193 of the Revised Code.

However, no R.C. 2929.14(F)(3) existed at the time of Mr. Nurse's sentencing hearing. Thus, the trial court was unable to comply with the provision as written given the absence of (F)(3) in the statute. Mr. Nurse does not explain how the trial court could have committed reversible error when there was no provision containing the notification referenced in R.C. 2929.19(B)(2)(g). Nor does he explain how his substantial rights were affected by the trial court's failure to inform him of something that did not exist. Assuming that the statute was meant to address the ability to receive credit for time served in prison, Mr. Nurse has not explained how he was precluded from obtaining credit. Nor would the failure to include the statement affect the defendant's ability to receive credit as a deduction from his or her prison term. *See* former R.C. 2929.14(D)(3).

{¶22}  Thus, we cannot conclude that any of Mr. Nurse's substantial rights were affected by the inability of the trial court to comply with the statute. *See* Crim.R. 52(A). Accordingly, Mr. Nurse's fourth assignment of error is overruled.

ASSIGNMENT OF ERROR V

> MR. NURSE WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL WHEN HIS TRIAL COUNSEL FAILED TO OBJECT TO THE TRIAL COURT'S FAILURE TO SENTENC[E] MR. NURSE IN ACCORDANCE WITH R.C. 2929.19(B)(2)(G).

{¶23}  Mr. Nurse's fifth assignment of error is that his trial counsel was ineffective for not objecting to the trial court's failure to provide the statement required by R.C. 2929.19(B)(2)(g). However, in order to prevail on an ineffective assistance of counsel claim, a defendant "must show (1) deficient performance by counsel, i.e., performance falling below an

objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that but for counsel's errors, the proceeding's result would have been different." *State v. Mundt*, 115 Ohio St.3d 22, 2007–Ohio–4836, ¶ 62, citing *Strickland v. Washington*, 466 U.S. 668, 687– 688, 694 (1984). As discussed above, any error on the trial court's part was harmless, and, therefore, even assuming that Mr. Nurse's trial counsel was deficient for not objecting, there is not a reasonable probability that the proceeding's result would have been different.

{¶24} Mr. Nurse's fifth assignment of error is overruled.

III.

{¶25} Mr. Nurse's assignments of error are overruled, and the judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
EVE V. BELFANCE
FOR THE COURT

CARR, J.
WHITMORE, J.
CONCUR.

APPEARANCES:

BRIAN M. ASHTON, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.